## BUELL *vs.* COLE.

The rule is well settled that one partner cannot sue his copartner, at law, except upon a balance struck, or an express promise, upon a full settlement of the partnership transactions.

A partnership existing between the plaintiff, W., S. and the defendant, under the name and firm of S. & Co., the defendant and S., on the 30th of Nov. 1853, sold their interest in the firm to the plaintiff and W., who agreed to take the same and pay the debts of the firm, provided the assets should be sufficient. At this time the firm was indebted to J. C. in the sum of $4000, and to W. C. in the sum of $2520. J. C.'s debt went into judgment, and the plaintiff and W. paid, upon the execution, $1500. In January, 1857, the plaintiff, S. and W. met, with J. C., and liquidated the sum due to J. C. at $2760, and it was agreed between the plaintiff, W. and S. and the defendant, that each should pay one quarter of that sum. The defendant not having paid his share of the debt to J. C., it was, in September, 1857, agreed between the partners that S., W. and the plaintiff should each pay one quarter thereof to J. C., (being $182.58 each,) and that the defendant should give his note to each for one quarter. Accordingly, the defendant made his four notes, for $182.58 each, one payable to the plaintiff, one to S., one to W. and one to J. C., and delivered them to J. C. to be delivered to the payees when they should each secure one quarter of the sum due to J. C. The plaintiff, S. and W. each secured to J. C. one quarter, and J. C. thereupon delivered to the plaintiff and W. two notes for $182.58 each, being the notes sued on.

The debt due from the firm to W. C. went into judgments, which, on the 9th of August, 1855, amounted to $2894.60. S., the plaintiff, W. and the defendant thereupon agreed with each other, for the purpose of getting time, to put the amount of the judgments into five notes, each agreeing to pay one quarter of each note, as it fell due. Five notes were accordingly executed and delivered to W. C., the first two of which were paid by the parties, as agreed, and the last three were paid by the plaintiff, S. and W. The plaintiff paid one quarter thereof, for the defendant, which the latter afterwards promised to repay him, and W. paid for the defendant the same amount, and afterwards assigned to the plaintiff his note and the claim for the money thus advanced for the defendant. There never was any accounting, or settlement of the partnership matters, between the parties, and the plaintiff and W. had not accounted for the effects of the firm which passed into their hands.

*Held* 1. That the contract between the parties, dated November 30, 1853, dissolved the copartnership of S. & Co., and by force of it the assets of the firm passed to the plaintiff and W., who were bound thereafter to pay and satisfy the debts of the firm, provided the assets transferred to them were sufficient for that purpose,

Buell *v.* Cole.

2. That the debts due to J. C. and W. C. being confessedly the proper debts of the firm of S. & Co., as between the plaintiff and W., and S. and the defendant, the two former became, thereafter, the principal debtors, and S. and the defendant sureties for the payment of the said debts, to the extent of the value or amount of the partnership assets received by the plaintiff and W. on the dissolution of the firm.

3. That, as between themselves, the only claim which the plaintiff and W. could thereafter make against their late partners, was that they should contribute ratably to the payment of such or so much of the partnership debts as should remain unpaid, after all the partnership assets received by them under the agreement had been fully exhausted and applied upon such debts.

4. That the notes so given by the defendant and S. to the plaintiff and W. were, in legal effect, simply accommodation notes, representing no debt or liability from the makers to the plaintiff and W., but were mere obligations of the sureties, in the hands of the principal debtors, for a debt which such principals were themselves bound to pay.

5. That the notes, not being given upon any settlement among the partners, or upon any adjustment of their accounts as between themselves, and there having been no settlement of the partnership accounts, no balance struck, and no promises to pay, they were not legal liabilities as between the partners themselves, and could not be enforced in their hands, as against each other, at law; and the plaintiff could maintain no action on them, or any of them, at law; his only remedy against the defendant being in equity, for the payment of his proportion of any deficiency which might be found due to him after the partnership assets were exhausted.

APPEAL by the defendant from a judgment entered upon the report of a referee.

The action was brought to recover on a note made by the defendant to the plaintiff, and on a note of the defendant's, payable to O. P. Wolcott, and for money paid by the plaintiff for the defendant, and money paid by O. P. Wolcott for the defendant, the note to Wolcott, and the demand for money paid by him, having been assigned to the plaintiff. The answer contained a general denial, a counterclaim, and, among other things, alleged that the demands, which the plaintiff was seeking to recover, were the debts and demands due and owing by the firm of A. H. Savage & Co., composed of the plaintiff, defendant, O. P. Wolcott and A. H. Savage. And that the plaintiff and Wolcott purchased the interest of the defendant and Savage, in

said firm, and agreed to pay the debts of the firm. That there never had been any accounting or settlement of the business of said firm. The action was referred to D. J. Sunderlin, to hear and determine, and was tried 6th October, 1863.

The referee, after hearing the proof, found, among other things, the following facts: That a copartnership was formed in 1851 between the plaintiff, Oliver P. Wolcott, A. H. Savage and the defendant. That on the 30th November, 1853, Savage and the defendant sold their interest in said firm to the plaintiff and Wolcott, they agreeing to take the same and pay the debts of the firm, provided the assets should be sufficient. That before the said sale and purchase, the firm became indebted to J. L. Cleveland in about the sum of $4000, and to Wm. H. Cheney in about the sum of $2520. That the debt to Cleveland went into judgment, prior to 19th September, 1854. That execution was issued thereon, 19th September, 1854, after which Buell and Wolcott paid on the same $1500. That Savage, Buell and Wolcott met with Cleveland at Wolcott's, on the 5th January, 1857, with knowledge of the defendant, and liquidated the sum due Cleveland, at $2760. That it was then and there agreed between Buell, Wolcott, Cole and Savage, that each should pay one quarter of the debt due Cleveland, and that such quarter should become their individual debt. That on the 26th September, 1857, the defendant, not having paid his share of said debt to Cleveland, the copartners had a meeting, it being ascertained that the defendant had not paid his quarter, and that said quarter amounted to $730.32. It was there agreed that Savage, Wolcott and Buell should each pay one quarter thereof to Cleveland, being $182.58 each; and that Cole should give his note to each for $182.58. Subsequently, Buell and Wolcott paid each a quarter thereof to Cleveland. That pursuant to said agreement, on the 27th September, 1857, the defendant made

his four notes for $182.58 each, and delivered them to Cleveland, to be delivered to the payees, when they should each secure the quarter of the $730.32 to Cleveland. That on the 27th September, 1857, Savage, Buell and Wolcott secured to Cleveland the one quarter. Cleveland thereupon delivered to the plaintiff and Wolcott the notes mentioned in the complaint. That prior to the 9th August, 1855, the debt due from the firm to Cheney went into judgments, which, on the 9th August, 1855, amounted to $2894·60. That Savage, Cole, Buell and Wolcott agreed with each other, for the purpose of getting time, to put the amount of the judgment into five notes, each agreeing with the other to pay one quarter of each note as it fell due. That the five notes were executed and delivered to Cheney. The first two were paid by the parties, as agreed, and the three last were paid by Savage, Wolcott and Buell. That when the three last notes fell due respectively, the plaintiff paid one quarter thereof for the defendant, which the defendant afterwards promised to repay him. That Wolcott paid the same sum as the plaintiff, for the defendant, to which the defendant made no objection. That Wolcott assigned his note and claim for money paid, to the plaintiff, on 26th June, 1862. That there never had been any accounting or settlement of the partnership matters between the parties. That the plaintiff and Wolcott had not accounted for the effects of the firm, which passed into their hands, under the agreement of the 30th November, 1853. That the debt due and owing Cleveland, and the debt due Cheney, were a portion of the debts of the firm, the payment of which was provided for by the agreement of 30th November, 1853.

As a conclusion of law, the referee found that the defendant was indebted to the plaintiff in the amounts of the two notes mentioned in the complaint, and for the money paid by the plaintiff and Wolcott on the notes

given to Cheney, in the sum of $992.08, and that the plaintiff was entitled to a judgment therefor.

On the hearing the defendant objected to the plaintiff's proving any agreement between the parties, as to what part each should pay, of the notes to. Cheney. The objection was overruled and the evidence received, to which the defendant excepted. The defendant offered to prove the facts alleged in his fourth and fifth answers, to which the plaintiff objected. The objection was sustained and the evidence excluded, to which the defendant excepted.

The defendant also offered to prove that the property and effects of the firm, which went into the hands of the plaintiff under the agreement of the 30th November, 1853, were more than sufficient to pay the debts of the firm, including the debts to Cleveland and Cheney, which was objected to by the plaintiff. The objection was sustained and the evidence excluded, to which the defendant excepted.

Upon filing the report, judgment was entered against the defendant, in favor of the plaintiff, for $992.08 debt, and $108.61 costs. The defendant made a case containing the evidence, facts found and the exceptions by the defendant, and appealed to this court.

*D. B. Prosser,* for the appellant. I. The referee erred in excluding the offer, on the part of the defendant, to prove that at the time of the sale by the defendant and Savage, to Buell and Wolcott, an estimate was made of the liabilities of the firm, which went into the hands of the plaintiff and Wolcott, and that such assets exceeded the debts and liabilities of the firm several hundred dollars. The evidence, if it had been received, tended to prove the allegations in the 4th and 5th answers of the defendant, which, if sustained, would have constituted a good defense to the action. Under the agreement of the.

30th of November, 1853, the plaintiff and Wolcott were bound to pay the debts of the firm, if the assets were sufficient. The sufficiency of such assets being once established, no promise or agreement on the part of the defendant would release or excuse Buell and Wolcott from the payment of the debts of the firm, unless founded upon some new and valid consideration, and there is no pretense that there was any such consideration for the promise on the part of the defendant.

II. The referee erred in excluding the offer of the defendant to prove "that the property and effects of the firm, which went into the hands of Buell and Wolcott under the agreement of 30th November, were more than sufficient to pay the debts and liabilities of the firm, including the debts of Cleveland and Cheney. The facts offered in evidence constituted a valid defense to the action. Why should the plaintiff be permitted to recover on the account of the payment of a debt which he had agreed to pay upon a good and valid consideration? It was his own debt, and the promise of the defendant was without any legal or moral consideration to support it.

III. The eleventh finding of fact is wholly unsupported by the evidence, and in conflict with the fact found by the referee, that the debt to Cheney was a debt of the firm of A. H. Savage & Co. The referee finds that the several sums mentioned in the eleventh finding were paid by the plaintiff for the defendant. The fact being established that the debt to Cheney was a debt of the firm, the payment thereof could not be for the defendant. It was not his debt, and there is no pretense that he even requested the plaintiff to pay the same; on the contrary, it was the plaintiff's own debt, and he paid the same for himself, because he was legally bound so to do. The debt to Cheney could only be made the debt of the defendant upon his assuming and agreeing to pay the same, upon a valid consideration, and there is no evidence of any such consideration.

And the defendant denies that he ever agreed to pay the same. The twelfth finding stands upon the same evidence as the eleventh. The remarks upon that finding will apply equally thereto.

IV. The referee erred in his conclusion of law upon the facts found by him. He finds that the debt to Cleveland and the debt to Cheney were the debts of the firm of A. H. Savage & Co., and that there had been no settlement or accounting in relation to the business of the firm. That the defendant and Savage sold out their interest in the effects of the firm to Buell and Wolcott, they agreeing to take the same and pay the debts of the firm, provided the assets should be sufficient. Under the agreement found by the referee the plaintiff and Wolcott became the principal debtors, the defendant and Savage, as to them, sustaining the relation of surety. Before either the plaintiff or Wolcott could call upon Savage or the defendant to contribute any thing towards the payment of the debts of the firm, they must show that the assets were not sufficient to pay the debts of the firm. It is well settled that one partner cannot maintain an action in the nature of assumpsit against his copartner, on account of the payment of a debt for which both were liable as partners, until after a settlement and a balance struck, with an agreement to pay. (*Murray* v. *Bogert,* 14 *John.* 318. *Westerlo* v. *Evertson,* 1 *Wend.* 532. *Pattison* v. *Blanchard,* 6 *Barb.* 537.) Here it is found that there had been no settlement of the partnership accounts. Until that takes place, it cannot be determined whether there is any thing to be paid by the defendant. The finding of the referee, of the agreement of the defendant to pay one quarter of the debt to Cheney, is not sufficient to justify the conclusion of law by him, there being no consideration for the agreement; and there is not any thing in the findings or in the evidence, from which any consideration can be inferred, sustaining the agreement of the defendant to pay

a part of the Cheney debt.    Under the agreement found by
the referee, on·the part of the plaintiff and Wolcott, they
were legally bound to pay Cleveland and Cheney.    Their
agreement was upon a good and valid consideration; they
were bound to faithfully apply the effects which passed
into their hands in payment of the debts of the firm; it
was their duty to convert the same into money and pay
the debts; the property was pledged for the payment of,
the debts; Buell and Wolcott were mere trustees to apply
the same in discharge of the liabilities of· the firm; they .
had no right to use the same in continuing the business,
as found by the referee.

*C. G. Judd*, for the respondent.    Before any one of the
exceptions of the defendant „were taken, the defendant
proved and· read in evidence the agreement of sale in
writing, whereby the defendant and A. H. Savage, two
of the members of the partnership firm of A. H. Savage
& Co., sold and conveyed to the plaintiff and O. P. Wol-
cott all their interest in and to the property and effects
of that firm; the plaintiff and Wolcott, in the same in-
strument, agreeing to pay the debts of the firm, provided
such assets were sufficient for that purpose ; which agree-
ment in writing was made Nov. 30, 1853.    By this proof,
which the defendant fully relied upon, and nowhere in the
course of the trial attempted to question or controvert, the
plaintiff claims that the defendant established, as a part
of his case, such sale and transfer of all the interest of the
defendant and Savage in the partnership property and
effects,·and must consequently abide by the legal effect
and incidents of that transaction.    By that sale and trans-
fer the plaintiff claims the said partnership firm was wholly
dissolved, and from thence hitherto the several members
thereof, so far as that partnership is concerned, as between
themselves at least, have had no partnership relations of
any kind, being, in the language of Chancellor Kent,

"distinct persons;" and after that time the business was carried on by Buell and Wolcott. (3 *Kent's Com., Lec.* 43, III. (7,) *pp.* 52, 63. *Story on Part.* §§ 272, 321, 328, 329. 17 *John.* 525. 6 *id.* 144. 4 *Barn. & Adol.* 175. *Geortner* v. *Trustees of Canajoharie,* 2 *Barb.* 628. *Cochrane* v. *Perry,* 8 *Watts & Serg.* 262.) Instead of his former rights as partner, after this sale, the defendant had no rights or claims against the plaintiff or against him and Wolcott, in relation to the partnership property or business, except such as were secured to him by said agreement in writing, and by that alone. (*Smith* v. *Howard,* 20 *How.* 121, 124. *Story on Part.* §§ 328, 326 note 1, 358, 359. *Gow on Part. ch.* 5, §§ 1, 3, *pp.* 227, 228, 305, 308.) And the several individuals who had thus been parties, in making any agreement among themselves, or executing any note or notes, could and did act only as "distinct persons," and without any other relations than such as were created by such agreement, and note or notes. It was therefore competent for the plaintiff, the defendant, Savage and Wolcott to make the agreements which the referee thus found they did make in relation to the payment of their original idebtedness, in any proportions by each or either as they pleased, and be bound thereby, the same in all respects as if they never had been partners, and as if the indebtedness had not been that of the partnership originally. The defendant was not entitled to inquire after the disposition of the assets of the firm after the transfer to Buell and Walcott, because, 1. The agreement did not require those assets to be applied to the payment of the partnership debts. 2. The defendant, by making the two notes to Buell and Wolcott, respectively, after the dissolution of the firm, took them and the amounts of them, respectively, out of the partnership business, and made it simply his individual liability, upon a sufficient consideration; that is, the payment of moneys for him by the payees. Upon the same principle, the making of the notes

to Cheney, after the dissolution, made them the joint and several promises of the makers, the same as if the partnership had never existed; and it was not necessary to prove the additional verbal agreements between the parties in accordance with the legal effect of those notes, and by the express mutual agreement of the four former partners. These matters were taken out of the partnership business. 3. Again, such accounting could not be had in this action for want of the proper parties. Wolcott and Savage were neccessary parties to such accounting, but they were not parties to this action. 4. The defendant was estopped from having such accounting, even if the proper parties had been before the court, by his executing and delivering those several promissory notes to the plaintiffs, Wolcott and Cheney, the purpose of such accounting being inconsistent with those acts, and also tending to vary and contradict the writings. The defendant was not at liberty to contradict the presumption arising from the giving of those notes, that there were no assets applicable to the payment of any of those demands, since no fraud or mistake is alleged; nor to contradict the legal effect of his express parol promises. The proof of the declarations of Cleveland, accompanying the act of the delivery of the two notes to Buell and Walcott as well as to Savage, was properly received, such declarations being clearly a part of the transaction, and giving character to the act—a part of the *res gestœ*. It was not necessary, for the purpose of sustaining this action, to prove an express promise by the defendant to pay, since the implied promise arising from his acts after the dissolution would make him liable in this action.

*By the Court*, E. DARWIN SMITH, J. The contract made by the plaintiff and defendant with Wolcott and Savage, dated November 30, 1853, dissolved the copartnership of A. H. Savage & Co. The assets of that firm, by force of

Buell *v.* Cole.

said agreement, passed to Buell & Wolcott, and they were bound thereafter to pay and satisfy the debts of the firm, provided the assets so transferred to them were sufficient for that purpose. The debts to Cheney and Cleveland, mentioned in the pleadings and in the report of the referee, were confessedly the proper debts of the firm of A. H. Savage & Co. at the time of the dissolution of said firm. It was therefore the duty of the plaintiff and the said Wolcott to pay such debts if the assets of the firm were sufficient for that purpose, and as between themselves and the said Savage and Cole they, the said Buell and Wolcott, became thereafter the principal debtors, and the said Savage and Cole sureties for the payment of the said debts, to the extent of the value or amount of the partnership assets received by the plaintiff and Wolcott on the dissolution of said firm. As between themselves, the only claim which Buell and Wolcott could thereafter make against their late partners was, that they should contribute ratably to the payment of such or so much of the partnership debts as should remain unpaid, after all the partnership assets received by them under the agreement aforesaid had been fully exhausted and applied upon such debts. Cole and Savage were liable only to contribute to make up the deficiency if such partnership assets were insufficient to pay the said partnership debts. When, therefore, the several partners gave their separate notes to Cleveland and Cheney for the amount of their respective debts, the notes so given by the said Savage and Cole, as between themselves and the said Buell and Wolcott, were in legal effect simply accommodation notes lent to the said Buell and Wolcott, provided the latter had sufficient assets of the firm of Savage & Co. in their hands to pay and discharge such debts to Cleveland and Cheney, together with the other debts of said firm. In the hands of the original creditors, Cheney and Cleveland, or of any third person to whom they might have transferred them, they were valid

notes; but in the hands of Buell and Wolcott, they were simply notes given without any consideration until the assets of the firm were exhausted. They represented no debt or liability from Cole and Savage to Buell and Wolcott. They were simply obligations of the sureties in the hands of the principal debtors, representing a debt which such principals were bound to pay off and discharge. Upon what principle the plaintiff can maintain an action on these notes before the partnership assets in his hands are exhausted and found insufficient to pay the said debts to Cleveland and Cheney, I cannot conceive, unless a principal debtor, after having paid his own debt and taken up the securities held therefor, can turn around and maintain an action on such securities against his own surety, to recover the amount so paid. If these views are correct in respect to the relative rights of the several members of the firm of A. H. Savage & Co. as against each other, it follows, I think, that the several findings of the referee excepted to on the trial excluding evidence tending to establish the fourth and fifth answers of the defendants, were erroneous. Those answers set up a complete equitable defense to the plaintiff's action. The possession of these notes of the defendants, prima facie, entitled the plaintiff to recover. But the defendant was clearly entitled to show that as between himself and the plaintiff these notes were given without consideration, and to secure a debt which the plaintiff himself was primarily bound to pay. He was entitled to show the facts set up in his two answers, the fourth and fifth.

All the exceptions, and there are quite a number, to decisions excluding evidence tending to prove such answers, I think well taken. A party now is entitled to set up an equitable defense, and it is just as available as a legal defense. I have no doubt that before the Code a court of equity, upon a proper bill filed for that purpose, would have restrained the action by the plaintiff upon the notes

aforesaid, and for the moneys paid by him upon the Cheney and Cleveland debt, upon the allegations contained in these answers. The answers do in effect allege that these notes have been paid by the plaintiff and Wolcott who were the primary debtors, for the payment thereof. The defendant offered to prove that the plaintiff received under the agreement of November, 1853, and had in his hands, more than sufficient of the assets of the late firm of A. H. Savage & Co. to pay said notes and moneys, together with the other debts of said firm. Certainly this was admissible, and would have established, I think, a complete defense to the suit. The plaintiff might perhaps be allowed to retain these notes till he had exhausted such assets. The answer of the defendant concludes with a prayer for affirmative relief that the plaintiff account for the property and effects of said firm of A. H. Savage & Co. which had come to his hands, and that the two promissory notes mentioned in the complaint be delivered up, or that they be canceled and destroyed. The partnership was dissolved, and the defendant had relinquished all interest in its assets and had no right to ask for an accounting, because he could recover nothing on such accounting from Buell and Wolcott. Such accounting would be requisite before they could call on Cole and Savage to make up any deficiency, or to pay them any amount over and above the assets of the copartnership which they, or either of them, might have paid to the partnership creditors. For the purpose of such an accounting, Wolcott and Savage would be necessary parties, and such an accounting, therefore, could not be had in this suit, so as to be final and conclusive. But the defendant had a right, as an equitable defense, to show that the plaintiff had paid these notes from the assets of the firm of A. H. Savage & Co. which came to his hands under the agreement of the 30th of November, 1863. So far he had a right to go to make out his defense.

But this judgment, I think, should be reversed for another reason. Upon the facts found by the referee, I think his conclusions upon the law, that the plaintiff was entitled to recover, erroneous. It seems to me that the plaintiff could no more maintain an action upon these notes, against the defendants, than he could for the account for which said notes were given, independently of the notes. The notes to Cheney and Cleveland were given by the respective parties to get time for the payment of the principal debts, and the time was extended by Cheney and Cleveland upon the receipt of such notes. The notes were not given upon any settlement among the partners, or any adjustment of their accounts as among themselves. There was no settlement of the partnership accounts, no balance struck, and no promises to pay, as between themselves. The notes simply represented their primary liability to their creditors, each note being given for one fourth of the original debt. It is apparent that they were put in this shape so that the original creditors, in giving an extension of the time for the payment of the respective debts, might retain all their security and not release either of their debtors. The notes had no relation to the ultimate claim of the plaintiff and Wolcott upon Cole and Savage, after exhausting the assets in their hands in payment of the partnership debts. The arrangement for the giving of said notes by Cheney and Cleveland was one for their common benefit, and for the especial convenience of the plaintiff and Wolcott, that they might have more time to collect the debts and convert the assets of the copartnership into money; and the notes of $182 were mere memorandum notes, as between the parties, to preserve their relative rights and liabilities as between themselves. The notes, therefore, were not legal liabilities as between the partners themselves, and could not be enforced in their hands, as against each other, I think, at law. In this view of the object and force of these notes, the plaintiff could main-

tain no action on them, or any of them, at law.   His remedy against the defendant was, in equity, for the payment of his proportion of any deficiency which may be found due to him after the partnership assets are exhausted.   The rule is well settled that one partner cannot sue his copartner, at law, except upon a balance struck, or an express promise, upon a full settlement of the partnership transactions.   (1 *Wend.* 534.   13 *John.* 402.   18 *id.* 245. 6 *Barb.* 538.)

The judgment, I think, should be reversed and a new trial granted, with costs to abide the event.

[MONROE GENERAL TERM, December 5, 1864.   *Welles, J. C. Smith* and *E. D. Smith,* Justices.]